ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Plaintiff,

v.

A.P.I., INC., defendant, counter-claim-
ant, third party plaintiff and judg-
ment creditor, Respondent,

v.

OneBeacon Insurance Company, as suc-
cessor to General Accident Insurance
Company, third party defendant and
judgment debtor, Appellant,

and

The Home Insurance Company, et
al., Third Party Defendants.

No. A06–1229.

Court of Appeals of Minnesota.

Sept. 11, 2007.

John H. Faricy, Jr., Craig M. Roen, Mark A. Gwin, Rebecca L. Kassekert, Faricy & Roen, P.A., David F. Herr, Margo S. Brownell, Jason A. Lien, Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, for respondent.

Eric J. Magnuson, Briggs & Morgan P.A., Eric J. Strobel, Thomas P. Kane, Hinshaw & Culbertson, Minneapolis, MN, for appellant.

James T. Martin, Gislason, Martin, Varpness & Janes, PA, Edina, MN, for amicus curiae Complex Insurance Claims Litigation Association.

Considered and decided by TOUSSAINT, Chief Judge; KALITOWSKI, Judge; and MINGE, Judge.

## OPINION

TOUSSAINT, Chief Judge.

This is an appeal from a judgment for respondent A.P.I., Inc. on its claim of appellant's wrongful denial of its tender of defense of asbestos actions. Appellant OneBeacon Insurance Company, as successor to General Accident Insurance Company, argues that (a) the jury was improperly instructed on breach of fiduciary duty and bad faith; (b) A.P.I. failed to prove its breach of contract claim because there was no evidence showing that OneBeacon breached the terms of the insurance policies with respect to any particular claim, because all claims were defended and paid by other insurers, and because A.P.I. failed to prove direct damages; (c) the consequential damages for A.P.I.'s actions in voluntarily seeking bankruptcy are speculative; and (d) any claims for breach

of contract by A.P.I. against OneBeacon are barred by the statute of limitations. By notice of review, A.P.I. (a) appeals the district court's decision on allocation of coverage among insurers; (b) requests amendments to the court's findings; and (c) moves to strike the brief of amicus curiae Complex Insurance Claims Litigation Association.

We affirm the district court's decision to allocate coverage among the insurers, but remand for a determination of the period of allocation. Because we conclude that the court misstated the law on breach of fiduciary duty and bad faith, which may have affected the trial of the breach of contract claims, we reverse the judgment and remand for a new trial on A.P.I.'s breach of contract and independent tort claims. We do not reach the issue of the propriety of the district court's ruling on the statute of limitations because the record is not fully developed regarding dates of breaches and the issue of concealment of the cause of action. We deny A.P.I.'s motion to strike the amicus brief.

## FACTS

From the 1940s until the early 1970s, A.P.I. (formerly known as Asbestos Products, Inc.) of Roseville, Minnesota, sold, distributed, and installed insulation materials, some of which contained asbestos, and worked as a contractor on large commercial products. A.P.I. purchased comprehensive general liability insurance as required by its customers and had multiple insurers over the years.

In about 1982, A.P.I. began being sued in asbestos-related personal injury lawsuits, most of which alleged injury from exposure to asbestos emanating from A.P.I.'s contracting operations. Beginning in 1983, A.P.I. tendered these suits to insurers for defense and indemnification; St. Paul Fire and Marine Insurance Company

and other insurers defended and indemnified A.P.I.

A.P.I. began tendering asbestos-related bodily injury claims to General Accident Insurance Company, the predecessor to OneBeacon, in 1987. At that time, A.P.I. could not produce a copy of the policy or certificate of insurance from General Accident, but it produced accounting records referring to A.P.I.'s payment of premiums to General Accident and identifying policy numbers. The records contained some conflicting information—A.P.I.'s attorney recognized and could not resolve entries showing that one insurance policy was issued by both General Accident and another insurer, and a General Accident policy appeared as both a workers' compensation and a comprehensive liability policy.

Based on the accountant's records, beginning in April 1987, A.P.I. sent letters to General Accident, notifying it of three policy numbers and A.P.I.'s position that it expected General Accident to defend and indemnify under those policies. General Accident responded that it could not process A.P.I.'s request without more information, that it had thoroughly searched for the policies, had not found any, and would continue to search, but its obligations were not triggered without production of the policies. In this way, A.P.I. tendered hundreds of claims to General Accident, which never defended or participated in the defense of any claim. In March 1999, A.P.I. ceased tendering ongoing claims to General Accident.

Insurance defense of A.P.I.'s asbestos claim litigation by other insurers was contested after the 2001 $8 million jury verdict against A.P.I. in *Akin v. American Standard, Inc.* The following year, St. Paul Fire and Marine brought a declaratory judgment action against its insured, A.P.I., seeking a declaration that it had no continuing obligation to defend A.P.I. in as-

bestos-related bodily injury and property damage actions. On April 29, 2003, A.P.I. brought this third-party action against several insurers, including OneBeacon, seeking a declaration of the insurers' duty to defend and to pay all sums A.P.I. had become or would become obligated to pay as damages.

A.P.I. alleged that it had three General Accident policy numbers retrieved by its accountants and that the coverage provided by General Accident would have been similar to that provided in the policies issued by other insurers. OneBeacon, having assumed the rights and obligations of General Accident, answered the third-party complaint. OneBeacon denied having any evidence demonstrating insurance coverage of A.P.I. and denied that A.P.I. was entitled to either defense or indemnity under any contract of insurance with General Accident.

In April or May 2005, A.P.I. obtained two certificates of insurance that were in the possession of one of its brokers. These showed that General Accident had issued comprehensive general liability policies to A.P.I. covering 1958 to 1964. By September 2005, all of the insurers except OneBeacon had settled with A.P.I., and the court had ruled on the issues of allocation of coverage among insurers and the applicability of the statute of limitations.

In November 2005, two weeks before trial, OneBeacon admitted that the two certificates were evidence of insurance from 1958 to 1964. The certificates showed coverage of $300,000 for each person; $1 million for each accident; and $1 million aggregate. Motions in limine were heard on November 21, 2005, and one week later the jury trial commenced.

Both parties testified that they searched for policies issued by General Accident to A.P.I., but neither was able to locate copies. Brooke Green of OneBeacon testified at the trial that General Accident could have produced specimen form policies with the same prefixes as those identified in the accountant's papers, but General Accident took the position that evidence of insurance policies and their terms was required before it was required to defend.

On December 7, 2005, an advisory jury returned a verdict for A.P.I.; on January 19, 2006, the court entered judgment for A.P.I. pursuant to the special verdict. The jury found that General Accident had issued three comprehensive general liability insurance policies to A.P.I. covering three periods: 1958–61; 1961–64; and 1964–66. The jury determined that the policies contained "substantially the wording as that contained in the policy forms" utilized by General Accident and that the policy limits for the first two periods were $300,000 per person; $1 million per occurrence; and $1 million aggregate. The jury also found that the limits did not apply to the third policy period and that General Accident had not proved that the aggregate limit for each policy was applicable to all coverages provided by each policy.

The jury found that General Accident breached its contracts by failing "to defend and/or indemnify" A.P.I. when claims were tendered to it by A.P.I., and those breaches caused "direct" damages in the amount of $27,573,824. The jury found that General Accident had acted in bad faith and breached its fiduciary duty, for which A.P.I. was entitled to $10 million and $15 million respectively. Finally, the jury found that General Accident falsely represented a material fact to A.P.I., knowing it was false and intending that A.P.I. would rely on it, but that A.P.I. did not rely on the false representation. The court adopted the special verdict as the court's findings and concluded that A.P.I. had prevailed and was entitled to judgment.

Both parties filed posttrial motions, which were heard on February 8, 2006. The court denied both parties' posttrial motions, but awarded A.P.I. attorney fees.

OneBeacon filed a notice of appeal, and A.P.I. filed a notice of review. This court granted leave for Complex Insurance to submit a brief, which was followed by A.P.I.'s motion to strike the brief.

## ISSUES

1. Did the district court erroneously instruct the jury on A.P.I.'s claims of bad faith and breach of fiduciary duty?

2. Did the district court err in awarding A.P.I. extracontractual damages?

3. Did the district court err in denying OneBeacon's motion for judgment as a matter of law and new trial on A.P.I.'s breach of contract claim?

4. Did the district court err in rejecting OneBeacon's defense of the statute of limitations?

5. Did the district court err in its determination that allocation of coverage among insurers should be based on time on the risk?

6. Did the district court err in denying requested amendments to findings and a court order?

7. Does A.P.I.'s motion to strike the amicus brief have merit?

## ANALYSIS

### I.

OneBeacon argues that the jury instructions were erroneous because Minnesota law does not recognize an insured's claim of bad faith and breach of fiduciary duty under the circumstances presented in this case and that the district court's instructions on these issues were error.

■■■ We review jury instructions to determine whether, taken as a whole, they are confusing or misleading on a material issue.[1] *Lindstrom v. Yellow Taxi Co.,* 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974). When instructions fairly and correctly state the applicable law, an appellate court will not grant a new trial. *Alevizos v. Metro. Airports Comm'n,* 452 N.W.2d 492, 501 (Minn.App.1990), *review denied* (Minn. May 11, 1990).

The district court instructed the jury that an "insurer and its policyholder hold a fiduciary relationship and the insurer owes its policyholder a fiduciary duty.... [A]n insurer acts in bad faith when it breaches its fiduciary duty."

■■■ The general rule is that special circumstances must exist in a relationship between parties for creation of a fiduciary relationship. *See Klein v. First Edina Nat. Bank,* 293 Minn. 418, 421–22, 196 N.W.2d 619, 622–23 (1972) (determining that evidence did not show confidential relationship between bank and its customer). Ordinary business relationships may involve reliance on a professional, a degree of trust, and a duty of good faith, and yet not fall within the class of fiduciary relationships. *See, e.g. Carlson v. Sala Architects, Inc.,* 732 N.W.2d 324, 331 (Minn.App. 2007) (concluding that no per se fiduciary relationship existed between architect and client), *review denied* (Minn. Aug. 21, 2007). The rights and obligations of the insurer and insured are determined by the insurance policy. *Pillsbury Co. v. Nat'l*

---

**1.** In the district court's memorandum attached to its denial of posttrial motions, it indicated that OneBeacon's objections to the fiduciary duty jury instructions were filed after the jury was instructed. The record reflects, however, that OneBeacon clearly objected to presentation of the fiduciary duty claim when the court heard the motions in limine.

*Union Fire Ins.*, 425 N.W.2d 244, 248 (Minn.App.1988). "The reality is that [the contractual] relationship [between insurer and insured] ... necessarily involves competing interests, which often generate litigation between the insurer and insured." *Cherne Contracting Corp. v. Wausau Ins.*, 572 N.W.2d 339, 343 (Minn.App.1997), *review denied* (Minn. Feb. 19, 1998). Thus, at its inception, the insurer-insured relationship is not fiduciary.

■■■ While recognizing that the relationship between the insurer and the insured is primarily contract-based and not special or confidential, Minnesota has carved out an exception when an insurer is obligated to assume and assumes the defense of the insured. For this fiduciary duty to arise, first, the insured must come forward with facts showing arguable coverage or the insurer must become independently aware of such facts so that the insurer is obligated to defend or to further investigate the potential claim. *See Metro. Prop. & Cas. Ins. Co. v. Miller*, 589 N.W.2d 297, 299 (Minn.1999) (stating that duty to defend arises if any one of asserted causes of action is arguably within scope of policy coverage); *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 316 (Minn. 1995) (stating when duty to defend arises). Second, the insurer must assume the duty to defend and the concomitant duty to reasonably settle. When there is no dispute as to coverage, liability, policy limits, and the duty to defend, the insurer owes the insured a fiduciary duty to settle claims in good faith. *Short v. Dairyland Ins. Co.*, 334 N.W.2d 384, 387–88 (Minn. 1983); *Kissoondath v. U.S. Fire Ins. Co.*, 620 N.W.2d 909, 916 (Minn.App.2001) (holding that insurer, who knew that insured would likely be liable, accepted defense, but refused to settle within policy limits had breached duty to insured), *review denied* (Minn. Apr. 17, 2001); *see also*

*Miller v. ACE USA*, 261 F.Supp.2d 1130, 1140–41 (D.Minn.2003) (limiting *Short's* and *Kissoondath's* imposition of fiduciary duty to context of settlement negotiations).

■■■ Here, the district court's instructions did not limit the fiduciary duty to special circumstances or to the situation arising when the insurer represents the insured for settlement purposes. The court's instruction that the insurer-insured relationship was per se fiduciary was incorrect. This error carried into the court's instruction equating a breach of fiduciary duty with bad faith. The errors in the instructions on breach of fiduciary duty and bad faith require reversal of the judgment on those two claims and remand for a new trial.

## II.

■■■ The jury found OneBeacon liable for extracontractual damages arising out of OneBeacon's breach of fiduciary duty and bad faith. Having concluded that the court's instructions on breach of fiduciary duty and bad faith were erroneous, the damages awarded for these claims must also be reversed. To establish extracontractual damages in this breach of contract action, A.P.I. must do more than simply allege a malicious or bad-faith motive in breaching a contract. *See Pillsbury Co.*, 425 N.W.2d at 248–49 (citing *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775 (Minn. 1975)); *see also Morris v. American Family Mut. Ins. Co.*, 386 N.W.2d 233, 237 (Minn.1986) (setting out "traditional rule" that bad faith breach of contract does not convert to tort). A.P.I. must prove the elements of an independent tort before the insurer's assumption of the insured's defense. *See Pillsbury Co.*, 425 N.W.2d at 249 (stating that such claims arise only in exceptional circumstances).

The district court instructed the jury on the elements of an independent tort: in-

tentional and negligent misrepresentation, but the jury determined that A.P.I. had not established that it had relied on a misrepresentation. Absent proof of each element of an independent tort, extra contractual damages were also unavailable. *Lickteig v. Alderson, Ondov, Leonard,* 556 N.W.2d 557, 561 (Minn.1996) (discussing tort damages in context of legal malpractice claim). On remand for retrial of the breach of contract action, A.P.I. may retry its claim of misrepresentation.

### III.

■ OneBeacon asserts that its duty to defend depended on the terms of its insurance contract and the substance of the particular claims tendered to it. It does not argue that it did not have the obligation to defend; it argues that A.P.I. failed to prove that "each complaint for which it sought a defense presented claims potentially covered under one of the alleged General Accident policies." It also argues that there is no evidence that it breached its duty to indemnify A.P.I. against lawsuits brought against it.

The jury found that OneBeacon breached its contracts of insurance by failing to "defend and/or indemnify" A.P.I. when claims were tendered to it. The jury also found that the breaches directly caused damage to A.P.I. in the amount of $27,573,824.

■ This court affirms a denial of judgment as a matter of law if there is any competent evidence in the record that would reasonably sustain the verdict. *Pouliot v. Fitzsimmons,* 582 N.W.2d 221, 224 (Minn.1998); *See* Minn. R. Civ. P. 50.01.

The jury's findings on breach of contract do not identify whether General Accident breached its duty to defend or to indemnify A.P.I. or when those breaches occurred. Although competent evidence indicates

that these duties existed during the policy periods and General Accident never acted to defend or indemnify, damages must be linked to breaches within the periods covered by the policies. *See Meadowbrook, Inc. v. Tower Ins. Co.,* 559 N.W.2d 411, 418–19 (Minn.1997) (comparing allegations of complaint against insured to language of insurance contract and assessing whether claims state cause of action within coverage afforded by policy); *Milbank Ins. Co. v. B.L.G.,* 484 N.W.2d 52, 59 (Minn.App. 1992) (remanding due to genuine issues of material fact as to whether insured was legally liable for covered loss under duty to indemnify), *review denied* (Minn. July 16, 1992).

On this record, we cannot determine the basis for the awards of damages, and we conclude that the awards may reflect the jury's misunderstanding of the law on fiduciary duty and bad faith. On remand of the breach of contract claim, the issue of when breaches and resulting direct and other contemplated damages occurred will be retried.

### IV.

■ The district court denied OneBeacon's summary judgment motion and post-trial motion for judgment as a matter of law based on the statute of limitations. The question of the applicable statute of limitations is a question of law reviewed by this court de novo. *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54 (Minn.1998).

■ The statute of limitations for a contract action is six years. Minn.Stat. § 541.05, subd. 1(1) (2006). Generally, a cause of action for breach of contract accrues when the terms of the contract are breached. *Bachertz v. Hayes–Lucas Lumber Co.,* 201 Minn. 171, 176, 275 N.W. 694, 697 (1937); *Amdahl v. Stonewall Ins. Co.,* 484 N.W.2d 811, 812 (Minn.App.1992)

(stating that limitations period on claim on insurance contract begins to run on identifiable claim against insurer), *review denied* (Minn. July 16, 1992). A duty to indemnify arises when the insured is legally obligated to pay damages as a result of a judgment or settlement. *Nw. Nat. Ins. Co. ex rel. Swanberg v. Carlson,* 711 N.W.2d 821, 825 (Minn.App.2006).

A.P.I. considered General Accident to be in breach when General Accident first declined A.P.I.'s request that it defend in 1987. Requests to defend and indemnify were ongoing, however, through 1999. A.P.I.'s requests ceased because General Accident would not acknowledge the existence of a contract of insurance requiring it to defend. In 2003, A.P.I. brought this action alleging breach of duty to defend and to indemnify.

 The district court determined that continuing breaches tolled the running of the limitations period. We are aware of no cases extending the doctrine of continuing violations from the typical discrimination or worker's compensation case to the breach of contract case that we have here. *Davies v. West Pub. Co.,* 622 N.W.2d 836, 841 (Minn.App.2001) (rejecting continuing violation doctrine and distinguishing continuing course of conduct from separate distinct acts), *review denied* (Minn. May 29, 2001); *see, e.g., State Dept. of Labor v. Wintz Parcel Drivers,* 555 N.W.2d 908, 912 (Minn.App.1996) (continuing worker's compensation violations), *review granted in part, decision modified,* 558 N.W.2d 480 (Minn.1997). Therefore, we conclude that each failure to defend or indemnify was a distinct breach and could be pursued within six years. The record on appeal, however, does not reflect the dates on which identifiable claims required General Accident to defend or when it became legally obligated to indemnify.

A.P.I. also argues that OneBeacon's fraudulent misrepresentations tolled the statute. *See Haberle v. Buchwald,* 480 N.W.2d 351, 356 (Minn.App.1992) (setting out elements to show fraudulent concealment of cause of action), *review denied* (Minn. Aug. 4, 1992). There is no jury finding to support the tolling of the six-year statute of limitations; the jury did not find fraud or that OneBeacon withheld or concealed the party's insurance contract. *See also Davies,* 622 N.W.2d at 841 (where elements of equitable estoppel were not shown, it could not serve to toll statute).

As the record on the running of the statute of limitations is not fully developed, we remand for findings on when the causes of action accrued and a jury determination of whether there was a basis to toll the statute of limitations.

**V.**

 A.P.I. challenges the district court's determination on summary judgment that pro rata time-on-the-risk allocation of coverage was appropriate under the circumstances of these asbestos claims. It also requests that this court limit the allocation period to years of available coverage based on *Wooddale Builders, Inc. v. Maryland Cas. Co.,* 722 N.W.2d 283 (Minn. 2006).

 On an appeal from summary judgment, this court must decide "(1) whether there are any genuine issues of material fact and (2) whether the [district] court erred in [its] application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). No genuine fact issue for trial exists if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (quotation omitted). The allocation issue is considered a fact-dependent damages

issue that is subject to the abuse of discretion standard of review. *In re Silicone Implant Litigation,* 667 N.W.2d 405, 417 (Minn.2003).

The district court applied the holding in *Domtar, Inc. v. Niagara Fire Ins. Co.,* 563 N.W.2d 724, 733–34 (Minn.1997), that pro rata time on the risk is the proper allocation "in those difficult cases in which … damage is both continuous and so intermingled as to be practically indivisible."

While agreeing that the undisputed medical evidence establishes that asbestos injury is "continuing in nature," A.P.I. argues that multiple discrete and identifiable events made General Accident liable for the damage that occurred during the period of its policy. Expert evidence at trial showed that the inhalation of the fibers could not be divided into discrete events; theoretically they are individual events, but not practically. Impracticality is a basis for apportionment. *See Domtar,* 563 N.W.2d at 733–34.

Amicus notes that "[m]ost courts nationwide have similarly allocated damages throughout the period of injury or damage." Specifically, amicus states that it would be unreasonable to expect a single policy to indemnify the policy holder for liability years after the policy ended. For the same reason, the "all sums" language does not defeat allocation—assessment of all sums in a single year is inconsistent with long-term exposure.

*Wooddale* specifically addressed periods during which the insured had no coverage. 722 N.W.2d at 297. It concludes that an insured that elects to assume a liability will be held responsible as self-insured. 722 N.W.2d at 297. The record does not reflect A.P.I.'s deliberate decision not to insure for asbestos injuries, but this issue was not directly considered and decided below.

We affirm the district court's exercise of discretion in its determination on pro rata allocation, but we remand for a determination on the total period over which liability is allocated.

## VI.

 A.P.I. sought additional findings and rulings following the return of the special verdict form. Because the jury had determined that there was an insurance policy with General Accident covering 1964–66, but had specifically not determined its policy limits, A.P.I. requested that the court make that determination based on evidence that it had always maintained the coverage required by its customers.

 On review, answers to special verdict questions will not be set aside unless they are perverse and palpably contrary to the evidence or where the evidence is so clear as to leave no room for differences among reasonable people. *Hanks v. Hubbard Broadcasting, Inc.,* 493 N.W.2d 302, 309 (Minn.App.1992), *review denied* (Minn. Feb. 12, 1993). The evidence must be viewed in a light most favorable to the jury verdict. *Id.* If the jury's special verdict finding can be reconciled on any theory, the verdict will not be disturbed. *Id.*

The fact question of limits on the policy in question was submitted to the jury. For each of the two prior policy periods, A.P.I. had certificates of insurance containing the policy amounts found by the jury. Absent this clear evidence on the policy limits applicable to the third period, the jury's answer was not "perverse"; the jury was not persuaded by the evidence offered by A.P.I.

A.P.I. also asks this court to strike hypothetical examples regarding injuries triggering coverage that were contained in the district court's summary judgment or-

der. As both parties agree that the examples are nonbinding dicta, we decline to strike those parts of the district court's order.

## VII.

This court granted Complex Insurance's motion for leave to file an amicus curiae brief in this appeal, stating: "The purpose of an amicus brief is to inform the court of facts or matters of law that may have escaped its consideration, not to repeat or emphasize arguments already put forth by a party." Complex Insurance filed its brief, and A.P.I. moved to strike the brief as improper.

 Complex Insurance expressly submits its brief "in support of OneBeacon Insurance Company" and urges this court to rule in OneBeacon's favor. Although the amicus brief should not argue that a particular party should prevail, such a position necessarily follows from the alignment of interests among insurance companies. Because alignment of interests is to be expected with trade groups, this alone does not support striking the brief. The brief sheds additional light on the important issues and considerations of the insurance industry, which pervasively affects the public. It provides citations to relevant precedent, arguments, and policy considerations not included in the primary briefs. Because the brief does not simply duplicate one party's position and adds some useful insights, it has merit, and we deny the motion to strike.

## DECISION

Because we conclude that the jury instruction misstated the law on breach of fiduciary duty and bad faith in this breach of contract action, we reverse the judgment and remand for a new trial on A.P.I.'s breach of contract and independent tort claims and resulting damages.

We do not reach the issue of the propriety of the district court's ruling on the statute of limitations because the record is not fully developed on the issues of accrual and concealment of the causes of action. We affirm the district court's decision to allocate coverage but remand for a determination of the total period of allocation. We deny A.P.I.'s motion to strike the amicus brief.

**Affirmed in part, reversed in part, and remanded; motion denied.**